IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DELES A. PINTO,

      Plaintiff,

v.                                                                                                 1:20-cv-01095-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Deles Pinto's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Pinto's challenge to the Commissioner's Final Decision on his application for Social Security benefits and entering Final Judgment in this appeal. [Docs. 4, 7]. Having reviewed the parties' briefing and the Administrative Record ("*AR*"), the Court grants Pinto's Motion and reverses the Commissioner's Final Decision denying Pinto benefits under the Social Security Act.

I. **INTRODUCTION**

This case is about the kinds of medical opinions the Social Security Administration may adopt when, acting through an Administrative Law Judge ("ALJ"), it denies disability benefits. Can an ALJ adopt two contradictory medical opinions as persuasive without explaining or reconciling the contradictions between them? The Court reaffirms that the ALJ cannot, without explanation, pick and choose parts of a single source so that only the parts favorable to denying benefits are given weight. Neither can an ALJ adopt as persuasive contradictory opinions from different sources so that only the unfavorable parts of each opinion are given weight without

explaining or reconciling the contradictions.  In so doing, ALJ Weiss erred and the error was not harmless.  The Administration's decision should be reversed and the case remanded.

## II.     PROCEDURAL HISTORY

Deles Pinto applied for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act on January 11, 2018.  *AR* at 235–42.[1]  Pinto alleged in his application that several medical conditions and symptoms, including gout, dizziness, impaired hearing on his right side, imbalance while walking, and effects of brain surgery which removed a tumor, prevented him from working as of February 8, 2013.  *AR* at 235, 270.  Pinto alleged without specificity that he stopped working in 2013 due to "my condition(s)."  *AR* at 270.  He later amended his disability onset date to December 22, 2017.[2]  *AR* at 49.

During the application process, Pinto's application and alleged medical conditions were reviewed by three mental health professionals.  First, Pinto received a consultative examination from Dr. John Koewler, PhD, on April 9, 2018, upon referral by the state agency for an intellectual and mental status assessment.  *AR* at 972–75.  Dr. Koewler performed a clinical interview, analyzed Pinto's mental status based on his behavior, and administered a Weschler Adult Intelligence Scale-IV test.  *See AR* at 972–75.  He interpreted Pinto's test results to show that Pinto's "[i]ntellectual ability is below the bottom of normal limits" with "[s]hort term memory and concentration. . . at the 9th percentile."  *AR* at 974 (bracketed language added).  Based on the results of his assessments and the test, Dr. Koewler gave this opinion:

> [Pinto's] ability to understand and remember detailed or complex instructions is markedly limited.  His ability to understand and remember very short and simple

---

[1] Document 18 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's internal pagination rather than the CM/ECF document number and page.
[2] Pinto also applied for social security disability insurance benefits under Title II of the Social Security Act.  *See AR* at 231–34.  The Administration found that Pinto was ineligible for those benefits because of his amended onset date.  *AR* at 27; *see* 20 C.F.R. §§ 404.130 (explaining how the Administration determines disability insured status), 404.131(b) (stating when an individual must have disability insured status for disability insurance benefits), *and* 404.315(a) (defining who is entitled to disability benefits while disabled).  Pinto does not challenge that finding.

> instructions is moderately limited.  His ability to carry out instructions is moderately limited.  His ability to attend and concentrate is moderately limited.  His ability to work without supervision is moderately limited.

*AR* at 974 (bracketed language added).

Pinto's application was then considered by Dr. Richard Sorensen, PhD, on April 11, 2018. *AR* at 86. Based on Pinto's statements and the medical records available to him, Dr. Sorensen gave his opinion on Pinto's mental residual functional capacity.  In contrast to Dr. Koewler, Dr. Sorensen asserted that Pinto is "[n]ot significantly limited" in his ability to understand and remember very short and simple instructions and to carry out very short and simple instructions.  *AR* at 84–84 (bracketed language added).  However, Dr. Sorensen agreed that Pinto is moderately limited in his ability to maintain attention and concentrate for extended periods of time.  *AR* at 84–85.  On February 12, 2019, Dr. Nicole Robicheau, Psy.D., made the same findings as to those capacities.[3]  *AR* at 142–43.

The Social Security Administration denied Pinto's application initially on August 6, 2018, *AR* at 153–56, and on reconsideration on February 12, 2019. *AR* at 166–70.  Pinto then requested a hearing before an ALJ, *AR* at 173–74, which he received on December 2, 2019. *AR* at 46–69.  ALJ Eric Weiss issued an unfavorable decision denying SSI benefits on January 13, 2020. *AR* at 24–45.  Pinto sought review from the Administration's Appeals Council but was denied on August 24, 2020. *AR* at 7–12.  This made the ALJ's denial the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210(a).[4]

---

[3] Although all of Pinto's medical records refer to Pinto as a male and there is no evidence in the record suggesting that Pinto wished to be called by feminine pronouns or titles, Dr. Robicheau's report refers to Pinto as a woman. *See AR* at 141–43.

[4] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court. *See* 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review.  *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

Pinto timely sued the Acting Commissioner in this Court on October 23, 2020, seeking review and reversal of the ALJ's decision. [Doc. 1]. This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a). The case was assigned to Magistrate Judge Jerry H. Ritter on October 23, 2020, [Doc. 3], and the parties consented to have Judge Ritter preside. [Docs. 4, 7].[5] On July 12, 2021, Pinto filed his motion to reverse and remand for a rehearing. [Doc. 21]. The Commissioner responded in opposition to Pinto's Motion on October 13, 2021, [Doc. 25], and Pinto replied on October 27, 2021, [Doc. 26], which completed briefing. [*See* Doc. 27].

## III.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). The Commissioner must apply a five-step sequential analysis to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[6]

At step one of the sequential analysis, ALJ Weiss found that Pinto has not engaged in substantial gainful activity since his alleged onset date. *AR* at 30. At step two, the ALJ determined that Pinto has severe impairments of "right posterior fossa benign brain tumor status post surgical resection; right parotid tumor status post surgical removal; gout; right hearing loss; and [not otherwise specified] cognitive disorder[.]" *AR* at 30 (bracketed language added). The ALJ also found that Pinto has several other impairments which, in the ALJ's view, do not significantly limit Pinto's ability to perform basic work activities and are thus non-severe. *AR* at

---

[5] Documents 3, 4, and 7 are text entries available on CM/ECF.
[6] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

30. These were "hypertension; prediabetes; left inguinal hernia post surgical repair; chest lipoma status post excision; Achilles tendonitis; lumbar muscle strain; obstructive sleep apnea; and obesity." *AR* at 30. At step three, the ALJ found that Pinto's impairments, individually and in combination, do not meet or medically equal any impairment in the regulatory "listings." *AR* at 31.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). Residual functional capacity is a multidimensional description of the work-related abilities a claimant retains despite his impairments. *See id.* at § 416.945(a)(1). It is "not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1. The ALJ determined that Pinto:

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. [§] 416.967(a) except that he can lift up to 20 pounds occasionally and lift and carry 10 [pounds] frequently and push and pull the same; walk and stand for two hours per eight-hour workday and sit for six hours per eight-hour workday with normally scheduled breaks; occasionally balance, stoop, kneel, crouch, and crawl; must avoid more than a moderate noise environment; must avoid exposure to unprotected heights and dangerous moving machinery; *is able to understand, remember, and carry out simple instructions and make commensurate work-related decisions*; can adjust to routine changes in a work setting; can interact appropriately with supervisors, coworkers, and the public; *and is able to maintain concentration, persistence, and pace for two hours at a time during the workday with normally scheduled breaks*.

*AR* at 32–33 (bracketed language and emphasis added). To explain the mental limitations placed on Pinto, the ALJ discussed Dr. Koewler's and the state agency psychologists' opinions. ALJ Weiss first restated Dr. Koewler's opinion and purported to adopt it as persuasive without any reservation. *AR* at 35. He then adopted the opinions of Drs. Sorensen and Robicheau as persuasive with the exception of one of Dr. Robicheau's opinions about Pinto's social abilities. *AR* at 36. The ALJ did not acknowledge any

5

contradictions between Dr. Koewler's and the state agency psychologists' opinions. *See AR* at 35–36. Applying his findings at step four, and relying on vocational expert testimony, the ALJ determined that Pinto cannot return to his past relevant work as a spray painter. *AR* at 37.

The ALJ found that Pinto was not disabled at step five, adopting the vocational expert's opinion that Pinto's age, education, work experience, and residual functional capacity allow Pinto to perform several unskilled, sedentary jobs listed in the Dictionary of Occupational Titles. *AR* at 37–38. The ALJ did not discuss any discrepancy between the skills and abilities needed for those jobs and Pinto's residual functional capacity. *See AR* at 38. The ALJ further found that these jobs existed in significant numbers in the national economy. *AR* at 37. Based on those findings, ALJ Weiss concluded that Pinto has not been disabled, as defined by the Social Security Act, from February 8, 2013, through the date of his decision. *AR* at 38. SSI benefits under Title XVI were thus denied. *AR* at 39.

## IV.   STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

## V.   ISSUES PRESENTED

(a) Whether the ALJ erred by mischaracterizing and ignoring certain parts of Dr. Koewler's medical opinion and adopting the rest?

(b) Whether the ALJ's reliance on the opinions of Dr. Richard Sorensen, Ph.D and Nicole Robicheau, Psy.D, caused the ALJ's residual functional capacity findings to be supported by less than substantial evidence?

(c) Whether the ALJ erred by failing to account for Pinto's subjective allegations of pain and cognitive disfunction?

## VI. PARTIES' ARGUMENTS

   a. Did the ALJ err by mischaracterizing or failing to account for Dr. Koewler's medical opinion?

Pinto first argues that the ALJ failed to apply correct legal standards in his adoption of Dr. Koewler's medical opinion. [Doc. 21, p. 14]. ALJs may not mischaracterize an uncontradicted medical opinion by picking and choosing only the parts favorable to a finding of non-disability. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). Further, an ALJ's decision must be specific enough to make clear to reviewing courts what weight the ALJ gave to a medical opinion and why the opinion was given that weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ purported to adopt Dr. Koewler's opinion as persuasive (*AR* at 35), yet, according to Pinto, made a residual functional capacity finding which did not contain several of the moderate functional limitations Dr. Koewler identified; the ALJ also characterized Pinto's IQ as being "at the bottom of normal limits" even though Dr. Koewler stated that Pinto's IQ was "below normal limits." [Doc. 21, p. 12–13]. In Pinto's view, these findings violated the *Haga* court's rule against mischaracterization and ignoring unfavorable evidence. [Doc. 21, p. 13–14]. Pinto argues that, without any explanation for why the ALJ made findings different from the opinions he appeared to adopt, this was reversible error.

The Commissioner argues in response that ALJ Weiss did not violate the applicable legal standards. [Doc. 25, p. 13]. An ALJ can account for certain mental and physical limitations on the claimant's abilities by limiting the claimant to unskilled work in the ALJ's residual functional capacity findings. *See Vigil*, 805 F.3d at 1204. The Commissioner argues that the ALJ's residual functional capacity findings were not inconsistent with Dr. Koewler's findings because the ALJ accounted for those findings by limiting Pinto to tasks that would be "essentially unskilled work." [Doc. 25, p. 13–14]. The Commissioner further argues that Pinto's alleged discrepancy between Dr. Koewler's IQ findings and the ALJ's description of Pinto's IQ is purely semantic and makes no difference in Pinto's residual functional capacity. [Doc. 25, p. 14]. Because the ALJ limited Pinto to unskilled work, and because the IQ discrepancy is "extremely minor" according to the Commissioner, the Commissioner argues that ALJ did not reversibly err.

      b. <u>Did the ALJ's reliance on Drs. Sorensen and Robicheau cause the ALJ's residual functional capacity findings to be supported by less than substantial evidence?</u>

Pinto argues next that the ALJ could not rely on both the opinions of Drs. Sorensen and Robicheau because they are internally inconsistent. The most important factors for determining what weight to give a medical opinion are consistency and supportability. *See* 20 C.F.R. § 416.920c. According to Pinto, judges in the District of New Mexico have held that residual functional capacity findings lack substantial evidence when the underlying medical opinions used to support the findings are internally inconsistent. [Doc. 21, p. 16] (citing *Milner v. Berryhill*, 1:16-cv-01050 GJF, *23 (D.N.M. Jan. 18, 2018) (unreported); *Chee v. Berryhill*, 1:16-cv-01105 CG, *15 (D.N.M. Sept. 18, 2017) (unreported)). Specifically, the Court held in each of these cases that a medical opinion in which the health professional's suggested working limitations were inconsistent with their narrative explanation could not be substantial evidence.

8

*See id.* In this case, Pinto argues that both Dr. Sorensen's and Dr. Robicheau's opinions presented mental residual functional capacity assessments suggesting that Pinto could engage in certain kinds of tasks while also suggesting that Pinto has "moderate limitations" in performing those tasks. [Doc. 21, p. 16–17]. If so, the opinions could not be substantial evidence unless the ALJ explained the inconsistency. Pinto thus argues that, because the ALJ did not explain those inconsistencies, the opinions were not substantial evidence and undermined the ALJ's ultimate residual functional capacity findings.

The Commissioner does not dispute that unexplained internal contradictions would make the ALJ's findings unsupported by substantial evidence. [*See generally* Doc. 25, p. 11–13]. As with the preceding issue, the Commissioner argues that the opinions of Drs. Sorensen and Robicheau do not meaningfully contradict each other because the allegedly contradictory findings are accounted for by a limitation to unskilled work. [Doc. 25, p. 12] (citing Program Operations Manual System (POMS) DI 25020.010(A)(3)(a), (B)(3); 20 C.F.R. § 416.968(a) (defining unskilled work)). Thus, to the degree that the opinions contradict each other or are internally contradictory, limiting Pinto to unskilled work negates those contradictions and prevents error. [Doc. 25, p. 12–13].

      c. <u>Did the ALJ err by failing to account for Pinto's subjective allegations of pain and cognitive disfunction?</u>

Pinto's final argument asserts another mischaracterization by the ALJ. Pinto argues that ALJs may not mischaracterize or misstate a claimant's allegations nor selectively pick and choose information from the record to support a finding of non-disability. [Doc. 21, p. 26] (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011)). In his discussion of Pinto's alleged gout pain and cognitive symptoms, the ALJ rejected Pinto's statements as "out of proportion to the objective medical

evidence." *AR* at 35.  Considering Pinto's pain, the ALJ observed that Pinto walks for exercise for up to forty minutes at a time; performs household chores; manages his personal hygiene; and prepares meals for himself, all suggesting that Pinto's pain is not debilitating.  *AR* at 36.  Meanwhile, regarding Pinto's alleged cognitive disorder, the ALJ pointed out that Pinto produced "no records of mental health treatment" for his alleged disorder, "displayed a fund of knowledge within general limits during his evaluation" with a consultative examiner, and had a "euthymic mood, logical thoughts, and adequate insight" among other observations.  *AR* at 36.  These assertions, in Pinto's view, mischaracterized the evidence.  Had the ALJ considered Pinto's allegations properly, the ALJ would have formulated a more limited residual functional capacity; thus, the ALJ's alleged mischaracterizations were harmful, reversible error.  [Doc. 21, p. 26–27].

The Commissioner does not dispute the rules against mischaracterizing, misstating, or picking and choosing evidence, but disagrees that the ALJ mischaracterized the evidence below.  [*See generally* Doc. 25, p. 8–11].  The Commissioner stresses that ALJs must weigh evidence according to its consistency with and support from other evidence in the record.  [Doc. 25, p. 8–9] (citing 20 C.F.R. § 416.929; SSR 16-3p).  In the Commissioner's view, the ALJ did not "pick and choose" evidence, but rather relied on substantial evidence in the record that Pinto's pain-related and cognitive symptoms were well-treated and less severe than Pinto alleged.  [Doc. 25, p. 9–10].  The Commissioner argues that Pinto's citation to records suggesting more severe symptoms does not show error but instead asks this Court to re-weigh evidence, which is not allowed.  [Doc. 25, p. 10].

## VII. ANALYSIS

Pinto's first two arguments, in their totality, assert that the ALJ erred in his treatment of Dr. Koewler's and the state agency psychologists' opinions while formulating Pinto's residual functional capacity. The Court finds that ALJ Weiss harmfully erred in this regard and will reverse and remand based on those arguments. Because those issues alone require remand, the Court does not reach Pinto's last argument.

> a. The ALJ erred by adopting contradictory residual functional capacity findings without accounting for or reconciling those contradictions in Pinto's residual functional capacity

The Administration's regulations and Tenth Circuit case law resolve this issue. The ALJ must consider all medical and other evidence of impairments when he formulates the claimant's residual functional capacity. 20 C.F.R. § 416.945(a)(3). The ALJ is not required to adopt wholesale any medical opinions or state agency findings. *Id.* at § 416.920c(a) ("[w]e will not defer or give any specific evidentiary weight. . . to any medical opinions(s) or prior administrative findings"). That said, when the ALJ considers such findings, he must provide reasoning for accepting or rejecting those findings specific enough for a reviewing court to follow. *See id.* at § 416.920c(b) ("[w]e will articulate in our determination or decision how persuasive we find all of the medical opinions an all of the prior administrative medical findings in your case record"); *Keyes-Zachary*, 695 F.3d at 1166. Further, the ALJ must discuss "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects[.]" *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (bracketed punctuation added). He cannot selectively "pick and choose" evidence which favors a finding of non-disability, *Frantz*, 509 F.3d at 1302–03, nor mischaracterize evidence to support his findings. *Bryant v. Comm'r*, 753 F. App'x 637, 641 (10th Cir. 2018).

The ALJ violated these rules by formulating a residual functional capacity for Pinto which was inconsistent with the medical and agency findings he purported to adopt as persuasive. First was the opinion of Dr. Koewler, who found that Pinto is moderately limited in his ability to understand and remember very short and simple instructions; to carry out very short and simple instructions; and to attend and concentrate. AR at 974. ALJ Weiss purported to adopt these findings as persuasive. AR at 35. Then, Drs. Sorensen and Robicheau found that Pinto is not significantly limited in his ability to understand and remember very short and simple instructions and to carry out very short and simple instructions, but is moderately limited in the ability to maintain attention and concentrate for extended periods of time. AR at 84–85, 141–43. ALJ Weiss purported to adopt these findings as persuasive. AR at 36. His written decision did not acknowledge that Dr. Koewler made different findings from Drs. Sorensen and Robicheau concerning Pinto's ability to remember, concentrate, or follow instructions. AR at 35–36.

The ALJ's adoption of these opinions was an error. Dr. Koewler's and the state agency psychologists' opinions contradict each other because a moderate limitation is not the same as having no limitation. *See Haga*, 482 F.3d at 1208. In *Haga*, the Tenth Circuit held that it was error for an ALJ to selectively adopt three moderate limitations proffered by a medical source while rejecting the source's fourth moderate limitation without explanation. *Id.* at 1207. The same principle applies here. Just as an ALJ cannot adopt some moderate limitations in the residual functional capacity and reject others offered by the same medical source without explanation, neither can an ALJ wholly adopt contradictory findings from different sources without explaining and reconciling the contradictions in those findings. *See id.* at 1208. The Court thus finds that the ALJ erred.

12

> b. <u>Limiting Pinto to unskilled work did not resolve the contradictory findings with Pinto's residual functional capacity</u>

Although limiting a claimant to performing unskilled work will sometimes account for a claimant's limitations, it was not enough in this case.[7] Unskilled work requires a worker to be able to understand, carry out, and remember simple instructions. POMS DI 25020.010.3.a. Dr. Koewler assessed moderate limitations in Pinto's ability to do all three of those things. *AR* at 974. Drs. Sorensen and Robicheau, meanwhile, asserted without reservation that Pinto can understand, remember, and carry out simple instructions. *AR* at 105, 143. As discussed above, these findings contradict each other.

A moderate limitation must mean something more than having no limitation. The word "moderate" does not have a universal meaning. Yet the difference between moderate limitations and no limitations can represent a "substantial loss" in the ability to meet the mental demands of unskilled work, which would justify a finding of disability. *See* POMS DI 25020.010.3.b. Whether limitations on the basic mental demands of unskilled work amount to a "substantial loss" is a fact finding the adjudicator must make. *See id.* at 25020.010.3.b, note. Without specific findings or discussion explaining how the ALJ was able to adopt Dr. Koewler's and the state agency's contradictory opinions, the Court cannot follow the ALJ's reasoning in reaching his residual functional capacity findings. The Court thus cannot review ALJ Weiss's decision to deny benefits and must remand. *See* SSR 06-03p, 2006 WL 2329939, at *6.

> c. <u>The ALJ's error was not harmless</u>

An erroneous decision is not reversible if it was harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (finding an ALJ's error harmless and thus not reversible). In

---

[7] The ALJ did not use the phrase "unskilled work," but found that Pinto can "understand, remember, and carry out simple instructions and make commensurate work-related decisions[.]" *AR* at 33. This is identical to the language used in the Administration's definition of "unskilled work." *See* POMS DI 25020.010.3.a.

13

the context of administrative appeals from the Social Security Administration's decisions, an ALJ's error is harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter in any other way. *Id.* at 733–34.

The Court cannot find that no other reasonable ALJ would have found differently from ALJ Weiss if the correct legal analysis had been applied. If the ALJ applied the correct legal standards and recognized the contradiction between Dr. Koewler's opinion and the state agency opinions, that ALJ could have concluded that Dr. Koewler's opinion was more persuasive and issued more limited residual functional capacity findings.[8] The ALJ may have even found that Dr. Koewler's moderate limitations to abilities required for unskilled work would prevent Pinto from performing such work altogether. The ALJ's error thus was not harmless and his decision must be reversed.

## VIII.   CONCLUSION AND ORDER

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Deles Pinto's Motion to Reverse and Remand [Doc. 21], is **GRANTED**, and the Commissioner's Final Decision in this case is **REVERSED**.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent

---

[8] The fact that Dr. Koewler opined that Pinto is not disabled makes no difference because the determination whether a claimant is disabled is reserved solely for the ALJ. *See West v. Barnhart*, 254 F. Supp. 2d 1216, 1224 (D. Kan. 2003) (holding that ALJs may properly reject statements by treating physicians which constitute a residual functional capacity finding because residual functional capacity is "an issue reserved to the ALJ"). ALJs may thus adopt the proper findings of a consultative examiner without agreeing with the examiner about whether the claimant is disabled.